One Henry Deal, who was present at the transaction, testified that he was the owner of a distillery, in the county of *Page 506 
McDowell, about two miles from his residence; that on the first day of March, 1858, the deceased, with the prisoner and two others, Glass and Moss, were at the still-house, after night; that the party had been drinking, and were all excited with liquor, except the witness himself; that the deceased, Pope, was more intoxicated than the others; that after night, Glass and Moss sat down to cards, playing on the head of a half bushel measure, and the prisoner and Pope were seated on a log, side by side before a fire which was made in front of the furnace of the still; that the prisoner and the deceased began to boast of their manhood, when the prisoner said to Pope, — "If I were to fight you, I would not fight you a fair fight"; to which the other said, he was not afraid of him, for that he had nothing but a knife or a pistol, and he was not afraid of them; that when this was said, the prisoner arose and stood at the corner of the fire, where there was a stick of oak, used as a poker for the still-fire; that the deceased still continued to sit on the log without seeming to notice the movements of the prisoner; that the deceased soon appeared to be quite drunk, his head hanging forward with his face downward; that he, Pope, said Glass was cheating Moss, and swindling him out of his money — that glass, said he was not; to which the deceased replied with an oath, calling Glass a liar; that Glass then seized the half bushel measure, and both he and Moss rose to their feet; that at that moment the prisoner struck Pope with the oak stick two blows on the head; then struck Moss and knocked him down, and then turned and struck a third blow at Pope, who was by this time prostrate on the ground; and Glass put the half bushel measure down without using it; that the prisoner stamped, or attempted to stamp and kick the deceased, until he was prevented by Glass, and witness; that when the blows were given, the deceased was sitting on the log as described, without appearing to know what was going on.
The witness Deal, produced the stick which was examined by the Court, and was admitted by the prisoner's counsel to be that with which the wounds were inflicted. It was oak, of *Page 507 
ordinary hardness and solidity, a little short of three feet in length, and from one inch and a half to two inches in diameter. Deal further stated, that the body of the deceased appeared to be in an insensible state during the night, and nothing was done except to dispose of the body before the fire and to raise the head by putting under it a piece of wood with his hat upon it.
One William Walker, said he was passing the distillery on the night in question, and he went in, having heard of the occurrence, and found some persons, whom, he did not remember, trying to get the deceased up, but he was unable to sit, and when raised, would tumble down again; that prisoner said Pope had called Glass a d____d liar, and he had just as well have called him so; and he no sooner said it than he killed him; that if deceased died, he was willing to be hung for it; but did not think a jury would hang a man for killing such a dog.
Dr. Atkins testified that being called to the deceased, he reached him next morning; that he had just been removed to a bed in the corner of the distillery; that he found him dying, and advised his removal to some dwelling, where better attention could be given him. He made a partial examination that day, and found the scull broken from the temple round to the back of the head; the patient died that day, and on the next, he made another examination, and found the skull shattered, the sacks containing the brain broken, the internal artery ruptured, and the whole brain suffused with blood. He found a cut across the forehead in a curved shape, and the bone of the head underneath broken, and, also, a cut across the nose, and the bones of that organ crushed. He testified that the deceased died of these wounds, and that any one of them was sufficient to produce death.
The prisoner's counsel contended that the instrument wherewith the homicide was committed, must be proved by a witness to be deadly, and that the instrument was not deadly, and malice could not be implied, but must be expressed, that *Page 508 
there was no intention to kill, and such a purpose could not be inferred.
The Court, after explaining, the grades of homicide in North Carolina, and defining the term, malice, and its two-fold application to the law upon that subject, proceeded to inform the jury, that in order to imply malice, and make a killing, without provocation murder, it was necessary the instrument used should be calculated to produce death, or some great bodily hurt; that the stick produced and identified, was subject to examination by the Court and jury, and supposing the blows to have been struck with the stick in the manner stated by the witness, Deal, while the deceased was in the attitude stated, they, (the blows) were manifestly calculated to produce grievous hurt, and therefore, the stick used in such way under such circumstances, was deadly. It followed, therefore, from general principles laid down, pertaining to the law of homicide, that if the killing was without provocation with the weapon in question, and the manner stated, the law would imply malice.
The Court further instructed the jury, that an intention to kill, was not necessarily involved in every case of criminal homicide, when a deadly weapon was used. If the blows were given, reckless of how they might result, in a manner actually endangering life by their violence and barbarity, and they turn out to be the cause of death, it is a case of homicide, the grade of which is to be determined by other circumstances. If without legal provocation, it is a case of murder. — Defendant excepted.
His Honor gave some other instructions not excepted to, and not deemed to be material to the question before this Court.
Verdict that the prisoner was guilty of murder. Judgment and appeal by the prisoner.
Whether an instrument or weapon be a deadly one, is, at least generally speaking, for the decision of the Court; because it is a matter of reason, that it is, or is not, likely to do great bodily harm, which determines its character in this respect; State v. Craton, 6 Ired. Rep. 164. Hence, it is clear that a gun, sword, large, knife, or bar of iron, and any other heavy instrument, by a blow from which a grievous hurt would probably be inflicted, are deemed in law, deadly instruments. An instrument, too, may be deadly or not, according to the mode of using it, or the subject on which it is used. For example, in a fight between men, the first or foot would not, generally, be regarded as endangering life or limb. But it is manifest, that a wilful blow with the first of a strong man, on the head of an infant, or the stamping on its chest, producing death, would import malice from the nature of the injury, likely to ensue. So, the actual effects produced by the instrument, may aid in determining its character in this respect, and in showing that the person using it, ought to be aware of the danger of thus using it. Here, as it seems to the Court, it must be apparent that the instrument as used, was likely to produce death, or, at the least, great bodily harm. It was an oaken staff, nearly three feet long, of the diameter of an inch and a half at one end, and two inches at the other. With it, three blows were inflicted, while the prisoner was standing over the deceased, and the latter was either sitting on a log with his head hanging down, too drunk to perceive his danger, or make an effort to escape it, or was down on the ground from the effects of the earlier blows, and each of them fractured the bones of the head; one, the skull on the side from the temple to the back of the head; another, the thick bones of the forehead; and the third crushed the bones of the nose. An instrument producing such effects, not accidentally on one occasion, but at each blow with it, is unquestionably a highly dangerous weapon, especially when used upon one in the posture and helpless condition of the deceased, and authorises the inference, that the prisoner must have understood the peril in which he was putting the deceased, and gave the *Page 510 
blows regardless of the consequences, just as much as if he had struck with a bar of iron. As the case appears, the offence is certainly murder, want only and cruelly perpetrated. There is no error.
PER CURIAM, Judgment affirmed.